IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE GRAHAM COMPANY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-1394 |
| | : | |
| v. | : | |
| | : | |
| STANTON T. GRIFFING and | : | |
| CONNOR STRONG COMPANIES, INC. | : | |
| F/k/a COMMERCE INSURANCE | : | |
| SERVICES, INC. | : | |
| Defendants. | : | |

### MEMORANDUM

**Jones, J.**                                                                                                                                      **May 19, 2009**

      In this matter Plaintiff The Graham Company ("Graham") has filed a Complaint against Defendants Stanton T. Griffing and Connor Strong Companies, Inc. f/k/a Commerce Insurance Services, Inc. (collectively, "Defendants") alleging that Mr. Griffing, Graham's former employee, breached his employment agreement, interfered with a prospective client of Graham, violated the Pennsylvania Uniform Trade Secrets Act, and engaged in conversion and civil conspiracy. Plaintiff asserted the existence of federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332 on the grounds that the parties are citizens of different states and the amount in controversy exceeds $75,000. Presently before the Court is Defendants' Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) and 12(b)(6) and/or for Summary Judgment Pursuant to F.R.C.P. 56 (Docket No. 36). The motion will be denied as follows.

**I.       12(b)(1) Motion and Federal Diversity Jurisdiction**

      Because the federal courts have limited jurisdiction, "[a] federal court is bound to consider its own jurisdiction preliminary to consideration on the merits." <u>Trent Realty Assoc. v.</u>

First Fed. Sav. & Loan Ass'n of Philadelphia, 657 F.2d 29, 36 (3d Cir. 1981) (citing Am. Fire & Casualty Co. v. Finn, 341 U.S. 6 (1951)).  For a plaintiff to establish federal diversity jurisdiction, the amount in controversy must exceed $75,000, exclusive of interests and costs.  28 U.S.C. § 1332(a).  The burden is on the plaintiff to prove the existence of jurisdiction.  Mortenson v. First Fed. Sav. and Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  Unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith; it must appear *to a legal certainty* that the claim is really for less than the jurisdictional amount to justify dismissal.  St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1983) (emphasis added); Columbia Gas Transmission Corp. v. Tarbuck, 62 F.3d 538, 541 (3d Cir. 1995) (holding dismissal is appropriate only if the federal court is certain that the jurisdictional amount cannot be met); Nelson v. Keefer, 451 F.2d 289, 292-93 (3d Cir. 1971).[1]  Finally, the Court's inquiry can only focus on facts that existed at the time Graham filed its Complaint.  Suber v. Chrysler Corp., 104 F.3d 578, 584 (3d Cir. 1997).  Accordingly, Defendants may not rely on facts that occurred after the Complaint was filed.

Defendants contend that Graham cannot establish that the amount in controversy exceeds the jurisdictional minimum of $75,000, and the Complaint must therefore be dismissed for lack of subject matter jurisdiction.  More specifically, Defendants contend that the only measure of damages to which Graham is entitled is the profits that it could reasonably expect to have secured had its former employee not breached his agreements.  Regarding Peace & Moretto, the only prospective customer at issue in the Complaint, Defendants cite other reasons why Peace &

---

[1] The threshold to withstand a motion to dismiss under F.R.C.P. 12(b)(1) is thus lower than that required to withstand a Rule 12(b)(6) motion.  Lunderstadt v. Colafella, 885 F.2d 66, 70 (3d Cir. 1989).

Moretto considered not retaining Graham and posit that Graham cannot assert that it reasonably expected to ensure any profits but for Griffing's alleged breach of his agreements after leaving the employ of Graham.  Defendant maintains the fallback position that even if Peace and Moretto failed to hire Graham because of some breach on Defendants' part, that contract for services would have been, at best, for a one year period valued at only approximately $53,000 to $58,000 in fees and commissions.

The Court finds that Defendants' argument ignores the full breadth of Graham's potential damages.  In proving damages for lost profits, evidence of past performance in an established business can be a valid and reliable basis for estimating future profits.  See Bolus v. United Penn Bank, 363 Pa. Super. 247, 268-69, 525 A.2d 1215, 1226 (1987), appeal denied, 518 Pa. 627, 541 A.2d 1138 (1988) (citing Massachusetts Bonding & Ins. Co. v. Johnston & Harder, 343 Pa. 270, 22 A.2d 709 (1941)).  Testimony at the preliminary injunction hearing demonstrated Graham is able to retain more than 95% of its customers from year-to-year.  See 4/3/08 Prel. Inj. Tr. at 34.  Graham's Executive Vice President testified that, on average, the company retains customers for ten years or more.  Id.  Graham has, therefore, brought claims worth potentially hundreds of thousands of dollars: based upon Graham's claims, it may be entitled to recover its lost business revenue from Defendants' conduct over an extended time into the future if the evidence shows that, if not for Defendants' conduct, Pearce and Morreto would have had an ongoing relationship with Graham for years.  And, indeed, there is already record evidence of contacts between Griffing and Pearce and Morreto after Griffing had left Graham's employ for the purpose of discussing the placement of insurance for all the business entities controlled and operated by Pearce and Morreto.  See 4/3/08 Prel. Inj. Hearing Tr. at 99-100; 134; 4/23/08 Prel Inj. Tr. at 18-

21. The fact that Pearce and Morreto did not, down the road, ultimately select Defendants (i.e., after the filing of this Complaint and due in part to it) is irrelevant, as we must focus on the claims at the time the Complaint was filed.  The Court is satisfied that the Complaint alleges claims that Defendants acted unlawfully by soliciting Pearce and Morreto's business and that, as the result of such conduct, Graham lost the business opportunity to service Pearce and Morreto.  These lost profits are recoverable as consequential damages and sought by the Complaint.

Beyond this, however, are Graham's claims for attorney's fees.  In determining the amount in controversy, this Court also considers valid claims for reimbursement of attorneys' fees.  See Suber, 104 F.3d at 585 ("Moreover, in calculating the amount in controversy, we must consider potential attorney's fees.") (citing Missouri State Life Ins. Co. v. Jones, 290 U.S. 199 (1933)).  Griffing's employment agreement specifically includes a prevailing party attorney's fees provision for any suits arising thereunder.  This provision may be enforceable at law.  See, e.g., PPG Industries, Inc. v. Zurawin, 52 Fed. Appx. 570, 580 (3d Cir. 2002) (enforcing prevailing party attorney fee provision in sales representative's agreement).  Graham's counsel have represented to the Court that have already incurred approximately $30,000 in fees, with a projected fee total of approximately $75,000 if this case proceeds.  This is added to the jurisdictional calculus.

Plaintiff has also brought claims for punitive damages, which, for purposes of determining the amount in controversy, may be aggregated with claims for compensatory damages unless the former are "patently frivolous and without foundation."  See Packard v. Provident Nat. Bank, 994 F.2d 1039, 1046 (3d Cir. 1993) ("When both actual and punitive damages are recoverable, punitive damages are properly considered in determining whether the

4

jurisdictional amount has been satisfied.") (citing <u>Bell v. Preferred Life Assur. Soc'y</u>, 320 U.S. 238, 240 (1943)).  Punitive damages claims are only considered patently frivolous and without foundation if they are unavailable as a matter of state substantive law.  <u>In re Corestates Trust Fee Litig.</u>, 39 F.3d 61, 64 (3d Cir.1994); <u>Packard</u>, 994 F.2d at 1046 (quoting <u>Gray v. Occidental Life Ins. Co.</u>, 387 F.2d 935, 936 (3d Cir.1968)).  Thus, "[i]f appropriately made, a request for punitive damages will generally satisfy the amount in controversy requirement because it cannot be stated to a legal certainty that the value of plaintiff's claim is below the statutory minimum."  <u>Golden ex rel. Golden v. Golden</u>, 382 F.3d 348, 355 (3d Cir. 2004).  Pennsylvania law permits the recovery of punitive damages for "torts that are committed willfully, maliciously, or so carelessly as to indicate wanton disregard of the rights of the party injured."  <u>Thompson v. Swank</u>, 317 Pa. 158, 159, 176 A.2d 211, 211 (1934).  Punitive damages may, therefore, be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to others.  Restatement (Second) Torts § 908(2) (1979); <u>Feld v. Merriam</u>, 506 Pa. 383, 395, 485 A.2d 742, 747-48 (1984).

The Court finds that Graham has alleged conduct on the part of Defendants that is recklessly tortious.  The Complaint expressly brings claims for tortious interference with existing and prospective contractual relations (Counts II and III).  These claims contemplate punitive damages.  <u>See, e.g.</u>, <u>Judge Tech. Servs., Inc. v. Clancy</u>, 813 A.2d 879, 888-90 (Pa. 2002) (upholding punitive damages award).  In addition, Counts IV, V and VI of the Complaint each allow for awards of punitive damages under Pennsylvania law.  <u>See, e.g.</u>, 12 Pa. C.S.A. § 5304 (allowing award of exemplary damages for violation of trade secrets act); <u>Frances J. Bernhardt, III, P.C. v. Needleman</u>, 705 A.2d 875, 879 (Pa. Super. 1997) (allowing for award of punitive

damages based on conversion issue); <u>Reading Radio, Inc. v. Fink</u>, 833 A.2d 199, 214 (Pa. Super. 2003) (allowing punitive damages where former employee and new employer civilly conspired against former employer). These requests for, and potential awards of, punitive damages provide another reason why the jurisdictional amount is satisfied here.[2]

Accordingly, the Court finds that the jurisdictional amount has been met in this matter and will deny Defendant's Rule 12(b)(1) motion for lack of subject matter jurisdiction with prejudice.

## II.     Rule 56 Motion

Since, in the instant case, defendants submit matters outside of the pleadings (relating to hearings conducted in this matter), the Court may, and does, treat Defendants' motion to dismiss as a motion for summary judgment. <u>See</u> Fed. R. Civ. P. 12(b); <u>In re Rockefeller Ctr. Props. Inc. Secs. Litig.</u>, 184 F.3d 280, 287 (3d Cir. 1999).[3]

Rule 56(f) states that if a party opposing a Rule 56 motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the Court may deny the motion, order a continuance to enable discovery to be undertaken, or issue any other just order. To that end, the Third Circuit has "criticized the practice of granting summary judgment motions at a time when pertinent discovery requests remain unanswered by the moving party." <u>Sames v. Gable</u>, 732 F.2d 49, 51 (3d Cir. 1984); <u>see also</u> <u>Miller v. Beneficial Mgmt. Corp.</u>, 977 F.2d 834, 845 (3d Cir. 1992) (finding an "incomplete state of discovery alone should have

---

[2] Given the plentiful support for the jurisdictional amount described above, the Court need not speculate about the value of the injunction relief sought by Graham.

[3] Defendants concede this is appropriate. Def's Br. at 20.

precluded summary judgment on the merits"); Contractors Assoc. of Eastern Pennsylvania, Inc. v. City of Philadelphia, 945 F.2d 1260, 1263 (3d Cir. 1991) (holding that where discovery is outstanding, continuance of summary judgment motion should "be granted almost as a matter of course"); 10A Wright & Miller, Federal Practice & Procedure § 2741 n.2 (1983 & Supp. 1995) (collecting cases holding that a grant of summary judgment before completion of discovery constitutes clear error).

Here, Graham's counsel has declared that virtually no discovery has occurred in this case. No Answer has been filed. Indeed, apparently the parties had not even exchanged basic discovery-identifying information via Rule 26(a) disclosures prior to the filing of the instant motion. Moreover, no formal written discovery or depositions of material witnesses has taken place. The Court agrees with Graham that, under these circumstances, it would be error to consider Defendants' premature Rule 56 motion. The motion will therefore be denied without prejudice.

### III.  Conclusion

The Court will deny Defendants' Rule 12(b)(1) motion with prejudice, convert the Rule 12(b)(6) motion to a Rule 56 motion, and deny the Rule 56 motion without prejudice. This matter will proceed in accordance with the deadlines set forth in the Court's February 11, 2009 Case Management Order.