IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THE GRAHAM COMPANY, | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | NO. 08-1394 |
| | : | |
| v. | : | |
| | : | |
| STANTON T. GRIFFING and | : | |
| CONNOR STRONG COMPANIES, INC. | : | |
| f/k/a COMMERCE INSURANCE | : | |
| SERVICES, INC. | : | |
| | : | |
| Defendants. | : | |

**Jones II, J.**                                                                                                                                                                                              **November 3, 2009**

## MEMORANDUM

Before the Court is Defendants' Amended Motion to Disqualify Plaintiff's Counsel (Docket No. 52), Plaintiff's Response thereto, and Defendants' Reply thereto. Stanton T. Griffing and Connor Strong Companies, Inc. (f/k/a Commerce Insurance Services, Inc.) ("Defendants") contend that, because in 2006 and 2007 Woodcock Washburn LLP ("Woodcock Washburn") represented the predecessor to Connor Strong Companies, Inc., in a trademark litigation concerning use of the mark "COMMERCE" in Massachusetts (the "MA Trademark Litigation"), the Graham Company ("Plaintiff") should be prohibited from retaining Woodcock Washburn to represent it in the instant action concerning alleged breach of an employment agreement, solicitation of Plaintiff's prospects, conversion and civil conspiracy. Plaintiff contends that Defendants have failed to satisfy the burden required to deprive Plaintiff of its right to legal representation of its choice.

The Court held a hearing on October 27, 2009, at which the parties offered testimony,

exhibits and argument. The Court has carefully considered the parties' positions. The Motion will be denied.

**I.      Background**

In February 2006, a Massachusetts insurance company known as Commerce Insurance Company (a long-existing entity unrelated to the Defendants), instituted the MA Trademark Litigation in response to the concern that Commerce Bancorp, via its wholly-owned subsidiary Commerce Banc Insurance Services, planned to enter the Massachusetts insurance market and utilize the name "COMMERCE," which Commerce Insurance Company claimed to have been using in Massachusetts for 34 years. The suit alleged that use by Commerce Banc and Commerce Banc Insurance Services of that moniker in connection with the new offering of insurance services in Massachusetts would result in trademark infringement and dilution in violation of federal and state laws. The Court is satisfied that the MA Trademark Litigation was focused on Massachusetts-specific trademark issues.

Woodcock Washburn, and more specifically partner John P. Donahue and several associates[1], represented Commerce Bancorp and its subsidiary in the MA Trademark Litigation. On August 1, 2007, Woodcock Washburn was terminated, via a letter sent by Defendants' current counsel, Brown & Connery, LLP. Subsequent to that termination, the MA Trademark Litigation was settled, with the plaintiff securing an agreement that Commerce Bancorp and Commerce Banc Insurance Services would not use the "COMMERCE" mark in Massachusetts for insurance-related services. The District Court entered judgment on August 27, 2007.

After Woodcock Washburn's termination and settlement of the MA Trademark

---

[1] At least one associate is no longer employed by Woodcock Washburn.

Litigation, Commerce Bancorp was acquired by TD Bank, but Commerce Banc Insurance Services split off and became an independent company. Commerce Banc Insurance Services later changed its name to Commerce Insurance Services, Inc., and then later became the Connor Strong Companies, Inc. ("Connor Strong") (the current corporate Defendant). Connor Strong does not use the "COMMERCE" trademark, which had been the sole subject of the MA Trademark Litigation.

Plaintiff was represented by the law firm of Bochetto and Lentz, P.C., from the commencement of the instant litigation until August 7, 2009,[2] at which time that firm withdrew as counsel and David J. Wolfsohn, a partner in Woodcock Washburn, entered his appearance without first seeking Defendants' consent. Defendants subsequently filed the instant Motion.

## II. Legal Standards

"One of the inherent powers of the federal court is the admission and discipline of attorneys practicing before it." In re Corn Derivatives Antitrust Litig., 748 F.2d 157, 160 (3d Cir. 1984). Therefore, when there is a risk that the litigation may be tainted by participation of counsel, the court has the power to fashion an appropriate remedy. Clark Capital Management Group, Inc. v. Annuity Investors Life Ins. Co., 149 F. Supp. 2d 193, 198 (E.D. Pa. 2001). The district court "has a wide discretion in framing its sanctions to be just and fair to all parties involved." IBM v. Levin, 579 F.2d 271, 279 (3d Cir. 1978). However, a district court should grant a motion to disqualify counsel "only when it determines, on the facts of the particular case, that disqualification is an appropriate means of enforcing the applicable disciplinary rule."

---

[2] Bochetto & Lentz, P.C., a firm that had not been involved in the MA Trademark Litigation, had already served discovery requests on Defendants prior to its withdrawal.

United States v. Miller, 624 F.2d 1198, 1201 (3d Cir. 1980). In making such a determination, the district court "should consider the ends that the disciplinary rule is designed to serve and any countervailing policies, such as permitting a litigant to retain the counsel of his choice and enabling attorneys to practice without excessive restrictions." Id. Even if the court finds that an attorney violated a disciplinary rule, "disqualification is never automatic." Id.

Indeed, in this district, motions to disqualify are an "extreme sanction" that should not be imposed lightly. Shade v. Great Lakes Dredge & Dock Co., 72 F. Supp. 2d 518, 520 (E.D. Pa. 1999). "[A] party's choice of counsel is a significant consideration in determining the propriety of disqualification. Id. (citing Commonwealth Ins. Co. v. Graphix Hot Line, Inc., 808 F. Supp. 1200, 1203 (E.D. Pa. 1992)). Courts in this district have consistently held that plaintiff's choice of counsel is entitled to substantial deference. "The court should not quickly deprive plaintiffs of their freedom to choose the advocate who will represent their claims, nor lightly dismiss the trust and confidence plaintiffs have placed in their chosen counsel. Additionally, the court must prevent litigants from using motions to disqualify opposing counsel for tactical purposes. For these reasons, motions to disqualify opposing counsel generally are not favored." Hamilton v. Merill Lynch, 645 F. Supp. 60, 61 (E.D. Pa. 1986). In short, there is a strong policy in favor of permitting a litigant to retain the counsel of his choice. See, e.g., Regional Employers' Assurance Leagues Voluntary Employees' Beneficiary Association Trust v. Gretchen Castellano, et al., No. 03-6903, 2009 U.S. Dist. LEXIS 56102, at *5 (E.D. Pa. July 2, 2009).

"The party seeking to disqualify opposing counsel bears the burden of clearly showing that continued representation would be impermissible. Vague and unsupported allegations are not sufficient to meet this standard." Cohen v. Oasin, 844 F. Supp. 1065, 1067 (E.D. Pa. 1994);

4

Commercial Credit Bus. Loans, Inc. v. Martin, 590 F. Supp. 328, 335-36 (E.D. Pa. 1984).

The Local Rules of the United States District Court for the Eastern District of Pennsylvania incorporate the Pennsylvania Rules of Professional Conduct, which the Supreme Court of Pennsylvania has adopted. See E.D. Pa. Local R. 83.6(IV)(B); Foley v. Int'l Brotherhood of Electrical Workers Local Union, No. Civ. A. 98-906, 1998 WL 720153, *3 (E.D. Pa. Sept. 10, 1998); Schwartz v . Steven Kramer & Associates, Civ. A. No. 90-4943, 1992 WL 208969, *2 (E.D. Pa. Aug. 17, 1992).

RPC 1.9 of the Pennsylvania Rules of Professional Conduct addresses conflicts of interest stemming from representation of former clients and provides:

> A lawyer who has represented a client in a matter shall not thereafter: (a) represent another person in the same or a **substantially related matter** in which that person's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation.

RPC 1.9(a) (emphasis added). The "substantially related" test is met when the former client "might have" disclosed to his attorney confidences in the course of the prior representation which could be used against him in the current litigation. In re Realco Services, Inc. v. Holt, 479 F. Supp. 867, 871 (E.D. Pa. 1979). As Judge Newcomer aptly explained in Realco:

> "Might" is a very broad word, and were it applied liberally, virtually any prior representation of a current adversary could serve as grounds for disqualification. Lawyers and clients talk to each other, and they 'might' talk about almost anything, especially when it is understood that the communications are confidential. This Court reads the 'might have acquired' part of the test in [American Roller Company v.] Budinger, 513 F. 982, 984 (3d Cir. 1975)], somewhat more narrowly: The lawyer 'might have acquired' the information in issue if (a) the lawyers and the client ought to have talked about particular facts during the course of the representation, or (b) the information is of such a character that it would not have been unusual for it to have been discussed between lawyer and client during their relationship.

Realco, 479 F. Supp. at 871-72; see also Commonwealth Ins. Co., 808 F. Supp. at 1204 (citing INA Underwriters Ins. Co. v. Nalibotsky, 594 F. Supp. 1199, 1206 (E.D. Pa. 1984)("[T]he court should be guided by the interpretation of the word 'might' set forth in Realco.")); Foley, 1998 U.S. Dist. LEXIS 14953 at *10 (quoting Realco's analysis of "might"). Moreover, the facts that "ought to have been discussed" must be facts that would be "detrimental to the former client in the current litigation." Foley, 1998 U.S. Dist. LEXIS 14953 at *9; see also Realco, 479 F. Supp. at 872 (confidences disclosed in earlier representation "will be harmful to the client" in later representation). Thus, to perform a substantial relationship analysis under Rule 1.9, a court must answer the following three questions: (a) what is the nature and scope of the prior representation at issue; (b) what is the nature of the present lawsuit against the former client; and (c) in the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action and detrimental to the former client therein. Commonwealth Ins. Co., 808 F. Supp. at 1204 (citing Nalibotsky, 594 F. Supp. at 1206); Reading Anthracite Co. v. Lehigh Coal & Navigation Co., 771 F. Supp. 113, 115 (E.D. Pa.

1991).

Even if a party meets its burden of proving that matters are "substantially related," a screen between the attorneys representing the former client and those representing the client adverse to the former client can prevent the opportunity for any arguably confidential information to be used against the former client. See, e.g., Voicenet Commc'ns, Inc. v. Pappert, No. 04-1318, 2004 U.S. Dist. LEXIS 6429, *8 (E.D. Pa., July 15, 2005) (finding screening of two attorneys who worked on prior matters for then-adverse client to be effective procedure); Atofina Chemicals, Inc. v. JCI Jones Chemicals, Inc., No. 01-3038, 2002 U.S. Dist. LEXIS 13970, *4 (E.D. Pa. July 10, 2002) (denying motion in part because a "Chinese Wall" was effective); Clark Capital, 149 F. Supp. 2d at 198 (concluding that even if confidential information was disclosed in prior representation, screening the "infected" lawyer would appropriately balance the interests of all parties).

## III. Discussion

In short, Defendants contend that during the course of the MA Trademark Litigation, Woodcock Washburn generally had access to trade secrets and confidential documents related to Connor Strong's (actually, its predecessors in interest's) "methods of operation, market position, marketing strategies, client relationships and competition," as a result of discovery efforts, deposition preparation, trial strategy meetings, and "access to the executive suite." In support of this proposition, Defendants cite the "Engagement Letter and the Addendum thereto" wherein Defendants assert that Woodcock Washburn purportedly acknowledged that "[i]n representing Commerce, we will gain access to certain data about Commerce's customers, legal forms, business methodologies, processes, financial information, business plans, computer programs,

7

and other materials embodying trade secret, customer product information or technical or business information of Commerce."[3] Defendants also offered the testimony of Connor Strong Executive Vice-President and Chief Financial Officer John F. Muscella for the proposition that whole, general categories of sensitive information were shared with Woodcock Washburn during a series of meetings undertaken to litigate the MA Trademark Litigation – primarily in preparation for a Rule 30(b)(6) deposition.

On cross-examination, however, Plaintiff elicited from Mr. Muscella that his discussions with Woodcock Washburn in preparation for the 30(b)(6) deposition were limited almost entirely to subjects particular to the COMMERCE trademark, potential Massachusetts customers, potential marketing strategies for Massachusetts, licenses in Massachusetts, and corporate identity. More specifically, Plaintiff elicited from Mr. Muscella the recognition that the sharing of marketing information with Woodcock Washburn was directed at demonstrating whether or not there were any state-specific marketing strategies in place for Massachusetts – not at laying out plans for the solicitation of clients in other states.

Plaintiff contends that the instant litigation has nothing to do with the issues involved in the MA Trademark Litigation, and thus any confidences particular to the MA Trademark Litigation that may have been revealed to a limited number of Woodcock Washburn attorneys years ago could not be used against Defendants in this action. Moreover, Plaintiff contends that even if Defendants somehow met their burden of demonstrating an actual conflict of interest, disqualification would not be warranted because Woodcock Washburn (a) returned all of

---

[3] However, Defendants were not able to produce a copy of this document showing that it was executed by *either* Defendants or Plaintiff.

Defendants' files and information when it was terminated (save some billing records, which would likely not reflect specific information), and (b) instituted a comprehensive screen to prevent any possibility that confidential information which Mr. Donahue and his associates might remember could be used against Defendants in this case.

To that end, Plaintiff offered the testimony of Mr. Donahue, whom the Court finds to have been highly credible. Mr. Donahue testified, in sum, that (a) confidential information received from Commerce Banc and Commerce Banc Insurances Services during the MA Trademark Litigation was limited to Massachusetts-specific trademark and business opportunity issues, (b) all information and files were returned by Woodcock Washburn after its termination, (c) he could not even remember the vast majority of information he received several years before concerning the MA Trademark Litigation, and (d) the entire Woodcock Washburn firm has been sternly advised in writing not to discuss any issues concerning Defendants or the instant litigation with Mr. Donahue and his former team.[4] Finally, Mr. Donahue affirmatively represented, as a member of the bar, that he has not shared any confidential information whatsoever with any Woodcock Washburn personnel involved with the instant litigation.[5]

---

[4] Defendants attempt to make hay out of the fact that the screen notice stated that firm employees should not discuss such matters with Mr. Donahue, but not that Mr. Donahue should not discuss such matters with firm employees. The Court finds the meaning of the screen notice to have been clear, and Mr. Donahue testified that he understood it to obviously mean the latter as well as the former. The Court finds no reason to believe that Mr. Donahue would parse the screen notice in such a way as to deliberately circumvent its plain meaning.

[5] On cross-examination, Defendants' counsel pursued a line of questioning in which he attempted to portray the reasons for Woodcock Washburn's termination in the MA Trademark Litigation as essentially the result of Mr. Donahue's poor performance. In addition to offering no evidence in support of this bald assertion, the Court finds that line of questioning to have been both irrelevant and inappropriate. The only implication the Court can divine from such questioning is that Defendants were suggesting that Mr. Donahue has some "axe to grind" for

During argument, Defendants reiterated the assertion that Woodcock Washburn had access to a wide swath of non-Massachusetts specific confidential information during the MA Trademark Litigation, and contended that there is a "commonality of issues" between the MA Trademark Litigation and the instant suit. Defendants acknowledged that screen procedures can be effective, but suggested that – for some largely unknown reason – such a screen would be ineffective here and that Plaintiff would have an "unfair advantage" nonetheless. Finally, Defendants argued that Woodcock Washburn should be disqualified because even the "perception" of a conflict cannot be tolerated.

Plaintiff argued that Defendants have not met their heavy burden of demonstrating that Woodcock Washburn had ever received confidential information that could be used against them in the instant litigation, because any such information that might have been shared with Woodcock Washburn was Massachusetts-specific and trademark-specific and therefore unrelated to the subject matter of the present action (which, once again, does not involve issues concerning selling insurance in Massachusetts or use of the COMMERCE trademark, or any trademark for that matter). Furthermore, Plaintiff reiterated its argument that precedent supports the use of a screen procedure even where there may be a conflict – and that, here, where there is not even a conflict, the screen just serves as additional security and a sign of Woodcock Washburn's commitment to maintaining the confidences of its former client as particular to the MA Trademark Litigation.

---

Woodcock Washburn's termination and would thus be inclined to deliberately violate the screen. If indeed made, the Court entirely rejects such a suggestion and its implication as to Mr. Donahue's potential lack of adherence to ethical standards.

The Court finds that disqualification is not warranted here. The Court concludes that the MA Trademark Litigation and the instant suit are not substantially related – indeed, they are essentially not related at all. Because of the limited scope and specific subject matter of the MA Trademark Litigation representation, there is little indication that Woodcock Washburn's lawyers and its client "ought to have talked about particular facts during the course of the representation" that could be used against Defendants in (or even be basically relevant to) the instant suit, and even if any confidential information that may have been shared was of such a character that it would not have been unusual for it to have been discussed between Woodcock Washburn and its client during their former relationship, it would not provide Plaintiff with any "unfair advantage" now. Put simply, the MA Trademark Litigation had nothing to do with solicitation of prospects or customers, nothing to do with Plaintiff, and nothing to do with employment/non-solicitation agreements. Furthermore, the MA Trademark Litigation concluded before Mr. Griffing – the central focus of the instant suit – even departed Plaintiff for Connor Strong. On the other hand, the instant suit has nothing to do with the Massachusetts market, the use of the COMMERCE mark, any likelihood of trademark confusion, or any other trademark issues. Thus, any information discussed in connection with the MA Trademark Litigation would not be potentially "detrimental to the former client in the current litigation," Foley, 1998 U.S. Dist. LEXIS 14953 at *9, or "harmful to the client" in later representation, Realco, 479 F. Supp. at 872.

Defendants' relatively vague and general allegations contrary to these conclusions are not persuasive; the Court simply cannot agree that Defendants have met their high burden of demonstrating that information Woodcock Washburn attorneys may have been exposed to in the MA Trademark Litigation is "clearly relevant and necessary in the instant litigation." See Def's

11

Br. at 9.  See, e.g., Blaylock v. Philadelphia Housing Auth., No. 02-8251, 2003 U.S. Dist. LEXIS 3406, *4 (E.D. Pa. Mar. 30, 2002) (even where a movant presents affidavits, the burden of proof is not met where those affidavits merely describe in general terms that the lawyer represented the former client in similar disputes); Wisdom v. Philadelphia Housing Auth., 2003 U.S. Dist. LEXIS 2055, *5-6 (E.D. Pa. Feb. 12, 2003) (where former counsel has represented authority for twelve years, motion denied because "it is unclear what confidential information was acquired that would be relevant" to another matter).

Moreover, the Court is satisfied that Woodcock Washburn (a) has purged its substantive files of confidential information once in its possession,[6] (b) regardless, has little, if any institutional memory of such old information, (c) has instituted a comprehensive screen, and (d) Mr. Donahue has represented to the Court, as a member of the bar, that he has not, and will not, discuss any matters related to Defendants with any Woodcock Washburn employees prosecuting the instant suit.  Even if "perception" of a conflict was the legal standard – which it is not, see Clark Capital, 149 F. Supp. 2d at 199 (rejecting argument that disqualification is necessary to protect against the "mere appearance of impropriety") – the Court does not perceive one here.

The Court is satisfied that the integrity of the judicial process is in no danger in this situation, and concludes that the circumstances of this case do not warrant the extreme sanction of disqualification.  Plaintiff is entitled to representation by Woodcock Washburn if it so desires,

---

[6] In recognition of the fact that Woodcock Washburn's billing records related to the MA Trademark Litigation might, although very unlikely, contain some specific confidential information, the Court will order Woodcock Washburn to segregate those records from its general files so that its current litigation team may not access them, and to recirculate its screen memo to explicitly include prohibited communication of any confidential information contained in those billing records.

subject to its current screen procedure. See, e.g., Pappert, 2004 U.S. Dist. LEXIS 6429, at *8 (denying motion to disqualify where attorneys who represented adverse client in prior actions because that work is outdated, had little relation to current matter, had not been disclosed by prior attorneys at firm, and those attorneys were effectively screened; Liko AB v. Rise Lifts, Inc., No. 07-5302, 2008 U.S. Dist. LEXIS 58033, *11 (denying motion where no attorney from firm that had previously represented plaintiff was working on the current litigation and ordering attorneys who previously represented plaintiff to be screened); Clark Capital, 149 F. Supp. 2d at 198 (finding disqualification of firm an inappropriate remedy, but rather that screening from the case would appropriately balance the interests of all parties).

For the sake of absolute caution, the Court will require Woodcock Washburn to revise its screen notice as discussed in footnote 6 of this Memorandum and re-issue it on November 16, 2009, as well as every two months following that date during the pendency of the instant action.

## IV. Conclusion

The Court finds that disqualification of Plaintiff's counsel is neither required nor warranted. The Motion will be denied, subject to Woodcock Washburn's revision and maintenance of its screen procedure. An appropriate Order follows.